UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FRANCINE SLOVIN, DAVID SLOVIN,        :
                                      :
                     Plaintiffs,           :
                                      :           12 CV 863 (HB)
  - against -                         :
                                      :           **OPINION & ORDER**
                                      :
TARGET CORPORATION,                   :
                  Defendant.            :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        Plaintiffs Francine Slovin and David Slovin ("Plaintiffs") move the Court for sanctions against Defendant Target Corporation ("Target") for spoliation of evidence and production of manufactured evidence. Plaintiffs ask that the Court strike Target's Answer, or in the alternative, grant an adverse inference instruction and preclude the use of the video excerpts and the photographs, as well as monetary sanctions and attorneys' fees. For the reasons stated below, the motion is GRANTED insofar as adverse inference and costs, including attorneys' fees, incurred in connection with this motion and is otherwise DENIED.

**Background**

        Plaintiff alleges that on August 22, 2010, at approximately 8:34 p.m., Plaintiff Francine Slovin ("Slovin") entered a Target store and immediately slipped on the wet tile floor while reaching for a cart near the entrance doors and injured her left knee. Seiden Decl. 1, 4. It had rained most of the day, and Plaintiffs allege that Slovin slipped due to the water that was dripping from the wet carts brought inside the store by Target's cart attendants. *Id*. at 3-4. Unable to stand up, Slovin was taken to a hospital in an ambulance and had surgery on her left knee on October 5, 2010, *id*., as well as a knee replacement surgery on November 29, 2012, *see* Def.'s Ltr. November 30, 2012. The photographs of the scene taken by Target after the accident, while their accuracy is hotly disputed, show that Slovin fell right next to a caution sign. *See* Seiden Decl. Ex. A.

        On September 1, 2010, approximately a week later, Dominick Fanelli, Esq. ("Fanelli") advised Target of his legal representation, which was acknowledged the next day by Katherine Kacner ("Kacner"), an examiner for Sedgwick Claims Management Services ("Sedgwick"), a third-party that administers Target's general liability policy. *Id.* at 5 & Exs. K, L. In the

following week, Fanelli requested a copy of the video footage taken by the camera near the entrance, but Kacner, according to Fanelli, said that she was unable to forward the video at the time. *Id*. Ex. K, at 2.  According to Fanelli's declaration, Fanelli and Kacner were in "constant contact over the next 12 months," and "[e]ach time liability was discussed [] Kacner stated that the video, which she had personally viewed, clearly showed a caution sign next to plaintiff [] when she fell . . . ." *Id*.  Kacner, throughout the negotiations, refused to produce the video and "never mentioned anything about the existence of photographs or incident reports." *Id.*  Target's settlement offer of $23,000 was rejected in August 2011, and Fanelli once again requested a copy of the video on August 22, 2011, so that he could review the "mitigating circumstances" that Kacner believed would favor Target. *Id*. Ex. M, at 2. Target, however, replied that it stood firm on its offer on September 16, 2011, based on the belief that "Target has a strong defense to this claim." *Id*. Ex. N.

Plaintiffs subsequently retained current counsel Seiden & Kaufman ("Seiden") in December 2011.. *Id*. 6.  On December 7, 2011, Seiden informed Kacner of its representation and asked for the video clip from 7:00 p.m. to 10:00 p.m., *id*. Ex. O, but Target continued to refuse on the ground that it was "privileged client information," *id.* Ex. P.  As a result, Plaintiffs commenced an action in the Supreme Court of the State of New York on December 23, 2011, and Target removed the case to the federal court on February 3, 2012.  On February 14, 2012, and again on March 19, 2012, Plaintiffs sought the video but to no avail. *Id*. Ex. Q.

It was only after the Court's order at the April 5, 2012 pre-trial conference, some two years after the accident, that Target finally produced a CD containing some video footage. Rather than a clip from 7:00 p.m. and 10:00 p.m., however, the CD contained only three brief excerpts between 8:34 p.m. and 8:58 p.m, totaling two minutes. *Id*. at 8.  The first clip, taken from the store entrance, is 41 seconds and shows Slovin entering through the set of automatic doors on the right, turning left towards the carts, and falling in front of the set of non-automatic doors to the left. *Id.* The second video excerpt, also that of the store entrance, is 64 seconds, begins 15 minutes after Slovin's fall, and shows emergency personnel arriving at the scene. *Id*. The third clip, approximately 28 seconds, shows a view of the store exit and Slovin leaving the store on a stretcher. *Id*.  In the first two clips, one can see a caution sign located some distance from the automatic doors to the right, but it is not possible to see whether there is indeed a caution sign in front of the non-automatic doors to the left, i.e. where Plaintiff fell, because the

door frames block the view. However, there is an object on the floor, barely visible and whose color is unclear, which may or may not be construed as a cone. In the third clip, two caution signs in front of the exit doors to the right are visible.

On May 7, 2012, in response to Plaintiffs' letter motion for an unedited copy of the video and Target's position that it had produced all of the video that was in its possession, the Court ordered Target to produce "an affidavit by a person with knowledge [to] explain the situation in detail . . . ." *Id*. Ex. U. Although Target had initially advised Plaintiffs that they would receive an affidavit from both Kacner and Christopher Murphy ("Murphy"), who had edited the video and photographed the scene after the incident, *id.* Ex. X, at 2, Plaintiffs received only Kracner's affidavit that stated, "Sedgwick had received three video clips from the store, all of which . . . have been exchanged with plaintiffs' counsel," *id*. Ex. V, at 2. As to Murphy, Plaintiffs were informed that he was no longer employed by Target. Plaintiffs contacted Murphy themselves, and he provided an affidavit on June 13, 2012. *Id.* Ex. X, at 3. According to Murphy's affidavit, "In every instance where I had to makea [sic] a disc I was instructed to enter the time as twenty (20) minutes before the incident until twenty (20) minutes after the incident is over or after twenty minutes after the emergency services leave the premises." *Id.* Ex. W, at 4. Murphy also states that in his two and half years at Target, he "never recall[s] doing anything other than burning a disc which contained full video from twenty (20) minutes before and after an event" and that he has no "idea how to produce clips or edit the video." *Id.* at 4-5. As a result, Murphy states, "[i]t is fair to assume that I produced a disc with approximately sixty (60) minutes of video," two copies of which were handed to his supervisor Todd Volovar ("Volovar"). *Id.* at 5. Volovar, however, disputes Murphy's account and states in his affidavit that he "personally reviewed the DVD . . . on August 23, 2010," saw only the three clips described above, and sent the copy to the Target headquarters. Def.'s Opp. Ex. A, at 2. Target's computer server discards video surveillance in its system after 30 days "in the regular course of business" *id*. at 3, and Volovar says nothing to suggest that Target did anything different here.

## Discussion

### A. Spoliation

The Second Circuit defines spoliation as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). The court has the inherent power to impose sanctions for the spoliation of evidence even in the absence of a discovery order. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). In turn, a party seeking sanctions for spoliation must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 288 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing *Residential Funding*, 306 F.3d at 107).

#### 1. Obligation to Preserve Evidence

Target's obligation to preserve the video here is beyond peradventure. Such an obligation arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). Target was undoubtedly aware immediately following the fall that the video would likely be relevant to future litigation, since Plaintiffs' counsel contacted Target one week after the incident, requested a copy of the video, and regularly apprised Target of Slovin's physical condition for a year until Target's settlement offer. Seiden Decl. Ex. K, at 1-2. The communications were simply icing on the cake, since the obligation arose at the time of the accident. *See*, *e.g.*, *Matteo v. Kohl's Dept. Stores, Inc., 09 Civ. 7830*, 2012 WL 760317, at *3 (S.D.N.Y. Mar. 6, 2012) (finding a duty to preserve the video of the customer's accident even though the actual lawsuit commenced ten months later); *Erdely v. Access Direct Sys., Inc.*, 847 N.Y.S.2d 108, 109 (2d Dep't 2007) (finding a duty to preserve when an ambulance had to be summoned after the plaintiff fell and the defendant reported the occurrence to its insurance carrier).

Target does not argue that it had no notice but instead attempts to eschew its obligation by arguing that it had no duty to preserve "additional" surveillance footage beyond the two-minute version containing the "entire incident" and by informing the Court that Target routinely recycles video footages within 30 days. Def.'s Opp. 9.  Target is mistaken about both the nature and the scope of the preservation obligation.  "Anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  Even if there is a routine retention and/or destruction policy, "[o]nce a party reasonably anticipates litigation, it must . . . put in place a 'litigation hold' to ensure the preservation of relevant [evidence]." *Id.* at 218.  Target had the duty to preserve an unedited version of the video, one that is continuous and certainly longer than two minutes, because the video would have shown the events leading up to and following Slovin's accident, which might have been relevant.

2. **Culpability**

Plaintiffs have also satisfied the culpability prong.  The "culpable state of mind" factor may be satisfied by a showing of bad faith, gross negligence, knowledge, or negligence, and the Second Circuit instructs the district courts to adopt a "case-by-case approach" because "[s]uch failures occur 'along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality.'" *Residential Funding*, 306 F.3d at 108 (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)).  Here, Target was certainly negligent in failing to preserve and editing the video, since "[o]nce the duty to preserve attaches, any destruction [] is, at a minimum, negligent." *Zubulake*, 220 F.R.D at 220.

On the other hand, the parties provide conflicting evidence with respect to Target's bad faith.  First, Plaintiffs, along with the videographer Chris Murphy, suggest that the original video was much longer, which Target denies adamantly.  Murphy, who produced the video for Target, states that he "never recall[s] doing anything other than burning a disc which contained full video from twenty (20) minutes before and after an event" and that he was "never trained how to cut video, edit clips etc." Seiden Decl. Ex. W, at 4-5.  Target, in response, relies on Volovar, who states that he reviewed the copy produced by Murphy the day after the accident, before he sent it to the headquarters, and that the copy contained only three short clips. Def.'s Opp. Ex. A, at 2.  Kacner also saw nothing but the three short clips. Seiden Decl. Ex. V, at 2.  One cannot help but wonder as to the facts with regard to Murphy's departure and if his recollections played a role in

5

his discharge. Second, Plaintiffs argue that the photographs of the scene produced by Target, which show that Slovin fell next to a caution sign, constitute "manufactured evidence" based on "the glaring differences" between the video excerpts and Volovar's purported confession during his deposition. Pl.'s Supp. 22-23.  Target argues that Plaintiffs mischaracterize Volovar's testimony, since Volovar readily admitted that the photographs were taken after Slovin was carried away but clearly stated that the photographs accurately represented the site of the accident. Def.'s Opp. 22.  Target also argues that unlike the photographs, which were taken inside the store, the view of the floor in the video is obscured by the entrance doors. *Id.* at 23.

With respect to the photographs, it is difficult to conclude that they are not accurate based on the video, on which Target relies, since the view of the floor is blocked by the left entrance doors.[1]  Neither do I find any admission of wrongdoing in Volovar's deposition, as Plaintiffs suggest; it is clear from the deposition that Plaintiffs were aware from the photographs that they were taken after Slovin fell, at 9:00 p.m. Seiden Decl. Ex. H, at 45-46.  Volovar, in turn, readily admitted that the caution signs in the photographs were moved "when the paramedics came in" and that the signs in the photographs were "an estimate at [sic] where the cones were." *Id.* at 82.  Reading Volovar and Kacner's affidavits about the original length of the video, however, it is at best strange that a sophisticated corporation like Target, sufficiently concerned about its liability to have a copy of the video forwarded to its headquarters the day after the accident, preserved only a 41-second clip of the accident and one that shows nothing that would explain the condition of the floor prior to Slovin's fall.  It is equally strange that Kacner, whose business is to determine Target's liability based on "the facts and circumstances regarding the incident," *id*. Ex. L, should have been satisfied with a 41-second clip knowing that there was a longer video in the system.

But, while disturbing to say the least, I need not reach the issue because Plaintiffs do not have to show bad faith to meet the culpability prong; even if Target had initially preserved only two minutes of the video, its subsequent decision to destroy the rest of the video indicates, at

---

[1] Although Plaintiffs also argue that the Court should separately sanction Target for producing these photographs, I decline to do so because Plaintiffs do not meet the high standard for establishing a fraud on the court. *See Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) ("A fraud on the court occurs where it is established by *clear and convincing evidence* that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by unfairly hampering the presentation of the opposing party's claim or defense.") (emphasis added and original quotation marks, alternation, and citation omitted).

6

minimum, gross negligence. From the conversations between Fanelli and Kacner during the first month after the accident, before any routine recycling, Target knew that the information contained in the video would be crucial to its liability and damages, yet chose to preserve only the segment that shows Slovin entering and then falling, as if the dispute would be limited to whether the accident happened at all, not the circumstances surrounding it. Yet the extreme brevity of the clip did not stop Target from relying on the video's content to justify a low settlement amount during the negotiations. According to Fanelli, "[e]ach time liability was discussed [] Kacner stated that the video, which she had personally viewed, clearly showed a caution sign next to plaintiff [] when she fell . . . . [,] an eyewitness to plaintiff's fall, and more specifically, a security guard at the front entrance . . . . [and] employees cleaning up the water." Seiden Decl. Ex. K, at 2. The produced video contains none of those scenes except that of a possible eyewitness. Although Kacner says that her statements to Fanelli were based not just on the video but also the incident reports and the photographs, *id*. Ex. V, at 2, Fanelli's following letter response to Kacner's settlement offer supports Plaintiffs' position that Target used the video as leverage during the negotiations: "If you wish to insist on such mitigating factors then I will require that you provide the surveillance video for the incident to demonstrate that the mitigating factors existed . . . . [since] I have not found anything mentioned in the accident report or my client's account that supports your position." *Id*. Ex. M, at 2. In light of Target's discussions with Plaintiffs' counsel about its liability and the contents of the video during the first month after the accident, when the full-length video would have been available still even pursuant to Target's practice, its failure to preserve the rest of the video is, at minimum, grossly negligent. *See, e.g.*, *Zubulake*, 220 F.R.D. at 221 (finding gross negligence for permitting routine recycling of tapes after being "*unquestionably* on notice of its duty to preserve") (emphasis in original); *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 380 (D. Conn. 2007) (finding gross negligence where there was "no evidence that the defendants did anything to stop the routine destruction of the backup tapes after [their] obligation to preserve arose").

   3. **Relevance**

Plaintiffs, as the prejudiced party, also have met the burden to produce "some evidence" suggesting that the destroyed video would have been "relevant" to substantiating their claim and that "destroyed evidence would have been of the nature alleged by the party affected by its destruction." *Byrnie*, 243 F.3d at 108 (quoting *Kronisch v. United States*, 150 F.3d 112, 127-128

(2d Cir. 1998)). Although the unavailable evidence must be "more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence,"[2] "[c]ourts must take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Residential Funding*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 128). The incident reports clearly state that the floor was wet from the carts, Seiden Decl. Exs. AA, BB, and a longer video would have shown where the water came from and what the Target employees were doing about it before Slovin fell, which in turn would demonstrate the extent of Target's breach as well as causation. More specifically, the video would have shown whether the Target employees were following or blatantly disregarding the internal policies described by Volvar in his deposition—whether the employees brought carts through a separate entrance, kept the wet carts on the carpeted area, and cleaned water as soon as they saw it. *See* Seiden Decl. Ex. H, at 25-34. Plaintiffs, for example, could have used the video to support Murphy's statement that "[i]f the cart well is full of shopping carts the cart attendants would then push the remaining carts through the guest entrance doors, rain or shine," *id.* Ex W, at 2, a fact that Volovar disputes, *id.* Ex. H, at 25. Furthermore, since there was a set of entrance doors right in front where Slovin fell, a longer video would have provided a view of the accident site as people would come in through those doors, and Plaintiffs would have had an opportunity to dispute the existence of the caution sign in the area where Slovin fell.

It is noteworthy too that "a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." *Residential Funding*, 306 F.3d at 109 (citing *Reilly*, 181 F.3d at 267-68). Here, Target's behavior with respect to the video was egregious and supports a finding of relevance as a matter of law. As discussed above, Target not only edited the video in a manner that would prevent the jury from directly observing the circumstances of the accident but used the same video as leverage during settlement negotiations. Although the Court ordered Target to explain this curious situation "in detail," Seiden Decl. Ex. U, neither Kacner nor Volovar's affidavit explains why Target decided to preserve only a 41-

---

[2] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

second clip of the accident, *see* Def.'s Opp. Exs. A, B. Target's behavior throughout, from the record before me, was shocking, and sanctions are appropriate. *See* Seiden Decl. Ex. Q.

### B. Sanctions

A district court has broad discretion in crafting a proper sanction for spoliation to serve "the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The sanction should be designed to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Id.* (quoting *Kronisch*, 150 F.3d at 126). A court should impose the least harsh sanction which would serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal. *Passlogix*, 708 F. Supp. 2d at 420. Plaintiffs ask the Court to strike Target's Answer, or in the alternative, to grant an adverse inference instruction and preclude the use of the video excerpts and the photographs, as well as for monetary sanctions and attorney's fees.

I do not strike Target's answer or preclude the use of video excerpts and photographs, which are drastic remedies that "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West*, 167 F.3d at 779 (quotation marks, citations, and alterations omitted); *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641 (2d Cir. 2009). An adverse inference instruction will, I believe, be sufficient here to deter similar future conduct, shift the risk of erroneous judgment on Target, and restore Plaintiffs' position in litigation. *See, e.g.*, *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048, 2005 WL 1925579, at *8 (S.D.N.Y. Aug. 11, 2005) (denying the remedy of striking the answer and precluding the evidence but granting adverse inference based on gross negligence). The language of the charge will be fashioned at the charging conference.

I also award Plaintiffs the costs, including attorneys' fees, that were incurred in connection with this motion because I find that Target's conduct with respect to the video—both the manner in which it preserved or failed to preserve the video and delayed its production during discovery—warrants such a sanction. *See In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 201 (S.D.N.Y. 2007) (awarding costs, including attorney's fees, to send the message that

9

"egregious conduct will not be tolerated" and to serve the remedial purpose in making the opposing party "whole") (citations omitted).

### Conclusion

For the reasons stated above, Plaintiffs' motion for sanctions is GRANTED in part and the Court will charge adverse inference. Further, costs, including attorneys' fees, incurred in connection with this motion are GRANTED, and documentation therefor will be submitted in an order on notice within 10 days from date and any response from Defendant 10 days thereafter. The Clerk of the Court is instructed to close the motion and remove it from my docket.

SO ORDERED
March __, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

10